## George B. Wilkinson v. Alonzo Alley.

The tools of the occupation of a debtor, being a farmer, and to the amount of fifty dollars, are now exempted by law from attachment and execution, whether required for immediate use or not.

The farmer's tools of occupation are his plough, cart wheels and other rigging, harrows, drags, and such implements of husbandry, or of manual labor, as are appropriate to the business of his profession.

This action was tried by the court.   It was trespass against the defendant, as an officer, alleging that he took with force, &c., on the 4th of April, 1863, plaintiff's plough, wheels, axletree, &c., harrow and drag, all of the value of $15, alleged to be the tools of his occupation, and exempt by law from attachment.· It was admitted that the plaintiff was by profession a farmer, and that the aforesaid tools were the same used by him, and required for use on the farm occupied by him, and that he had no other farming tools at that time left for his use equal to the value of five dollars.

The defendant's plea was the general issue, with a brief statement, under which he alleged the taking, as an officer holding an execution against the plaintiff, in due form of law, &c., and that he was duly qualified to execute the same, and complied with the law in advertising, selling and applying the proceeds of said property in all respects on said execution.   The facts, as set forth in said brief statement, were admitted, and the defendant contended that the aforesaid property was liable by law to attachment.   The court ruling differently, as plaintiff was a tenant and did not require the use of his tools, upon the facts as found, the defendant excepted.   Elias Towle, Esq., was appointed auditor, under the agreement of the parties, to assess the damages, provided the opinion of the court should be for the plaintiff.

*Pease,* for the plaintiff.

*Topliff,* for defendant, referred the court to the following authorities : *Daily* v. *May,* 5 Mass. 313 ; *Buckingham* v. *Billings,* 13 Mass. 82 ; *Howard* v. *Williams,* 2 Pick. 80 ; *Danforth* v. *Woodward,* 10 Pick. 423 ; *Smith* v. *Gibbs,* 6 Gray 298 ; *Pierce* v. *Gray,* 7 Gray 67.   To show the probable intent of our statute, defendant's counsel referred to 11th chap. sec. 36, 81 Rev. Stat. of Maine.

Nesmith, J.   The object of our statutes in exempting property from attachment and execution, manifestly is, to protect for the use of poor debtors, including farmers, such tools of their trade, not exceeding a definite amount, as might be indispensable in enabling them to obtain a living in their occupation.   The statute of A. D. 1807 exempted from attachment and execution *one cow,* or, in case the debtor was a mechanic, *tools* of his occupation to the value of $20, in lieu of said cow.   This statute gave the farmer no protection.

The next statute on this subject, passed January 3d, A. D. 1829, was a little more liberal in its terms.   Among other things, "it exempt-

ed from attachment, not only a cow and hay, &c., but, in case the poor debtor be a machanic or *farmer*, *tools* of his *occupation* to the value of $20. The statute of 1829 remained in force up to the time of the revision of the statutes in A. D. 1842, when the statute assumed its present form, except as to the amount of tools to be exempted. By Chap. 2604, sec. 1, of the Pamphlet Laws, passed July 2, 1862, "*tools* of the occupation of a debtor to the amount of $30, in addition to the amount before exempted from attachment," were thereafterwards to be exempted.

The obvious purpose of the present statute appears to be not to discriminate in favor of any particular class of poor debtors, but to secure to all laboring men a limited proportion of those helps or means by which they are accustomed to obtain subsistence in their respective occupations or professions. The word *tools*, as used in these statutes, is presumed to embrace such implements of husbandry or of manual labor as are usually employed in, and are appropriate to, the business of the several trades or classes of the laboring community, and according to the wants of their respective employments or professions, whether *farmer*, mechanic, manufacturer, or, in fact, any artisan or laborer, who may require the use of such helps to obtain his living. The limitation common to all debtors is, that he shall not retain more than fifty dollars worth of tools as against his creditor. This may sometimes embrace the blacksmith's hammer and his anvil, and sometimes not, if the anvil alone be worth $50 or more.

The last exemption law in Massachusetts was passed in 1857—Chap. 235, sec. 1, Rev. Laws; there the exemption of the tools of occupation is permitted up to one hundred dollars. Courts there, in giving a construction to this kind of statute, have, in one case, allowed a family a sewing machine; in another case, to a fiddler his fiddle and bow, when used by the fiddler, obtaining his living by that craft. In another case, the tools of the jeweller, suitable for himself and journeyman or apprentice in his employment, were exempted. *Howard* v. *Williams*, 2 Pick. 82. Recently, in the case *Pierce* v. *Gray*, 7 Gray 68, Judge Thomas employs the following decisive language, where a poor debtor's shovel, pick-axe, dung-fork and hoe had been seized by the order of a creditor: "That the business for which they were used was husbandry, does not render them less exempt from attachment. In the *country*, farming or gardening is, or ought to be, part of a man's business, and the soundest policy, as well as the language of the statute, forbids the taking of any of the tools so necessary to all good husbandry. And then tools may become more necessary, when the debtor has lost his land, so that he must get his bread by tilling the land of others." The latter part of Judge Thomas's reasoning was evidently designed to meet the illiberal inference of Judge Parsons, in *Daily* v. *May*, 5 Mass. 313, who there appears to ridicule the idea, that the legislature could have intended to leave to the debtor a plough, and cart, and gearing, and, at the same time, give the power to take away his oxen, without which they would be of no use.

The doctrine of Judge Thomas seems to us to comport with the de-

sign of their law, as well as our own, and to be such as should be adopted here in practice.   We are of the opinion, therefore, that the plaintiff is entitled to recover for the value of the property sued for, and that the case must go to the auditor to ascertain the amount.